IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COWAN SYSTEMS, LLC,

    *Plaintiff,*

        v.                        Civil Action No.: ELH-12-984

JEFFREY SHANE FERGUSON, et al,

    *Defendants.*

**MEMORANDUM OPINION**

Plaintiff, Cowan Systems, LLC ("Cowan"), has brought suit against defendants Jeffrey Shane Ferguson, a former Cowan employee, and Lipsey Logistics Worldwide, LLC ("Lipsey"), a direct competitor in the market of freight brokering and logistics. *See* Complaint (ECF 1) at 1-2. Cowan claims that Lipsey employed Ferguson, notwithstanding its knowledge of Ferguson's non-compete agreement with Cowan, and "deliberately facilitated and assisted Ferguson's calculated violations" of his non-compete agreement with Cowan. *Id.* at 2. Accordingly, Cowan has lodged claims under Maryland law against Lipsey for tortious interference with contract (Count IV); tortious interference with prospective economic advantage (Count V); violation of the Maryland Uniform Trade Secrets Act, Md. Code (2005 Repl. Vol.), § 11-1201 *et seq.* of the Commercial Law Article (Count VI); and civil conspiracy (Count VII). Cowan seeks injunctive relief (Count II); an accounting (Count VIII); and the imposition of a constructive trust (Count IX).[1]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Lipsey has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted ("Motion,"

---

[1] Jurisdiction is founded on diversity of citizenship, pursuant to 28 U.S.C. § 1332. The claims in Count I (Preliminary and Permanent Injunctive Relief) and Count III (Breach of Contract) are asserted only against Ferguson.

ECF 17), and has filed a memorandum in support of its Motion ("Memo," ECF 17-1).   In sum, Lipsey claims that Cowan's state law claims are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 *et seq*.   Cowan opposes the Motion ("Opposition," ECF 21), to which Lipsey has replied ("Reply," ECF 22).   No hearing is necessary to resolve the Motion.   *See* Local Rule 105.6.[2]

### Factual Background[3]

Cowan and Lipsey are limited liability companies that provide freight brokering and logistics services throughout the eastern United States.   Complaint ¶¶ 1, 3.   They are direct competitors.   *Id.* ¶ 3.   Ferguson worked for Cowan for almost two years, commencing on or about January 19, 2010.   *Id.* ¶ 2.   During his employment, Ferguson was "Director of Sales" in the freight brokerage and logistics division of Cowan, and was provided with and had access to confidential and proprietary information of Cowan.   *Id.* ¶¶ 2, 5.   This information included the "needs, preferences, budgets and contracts of customers and/or potential customers," including SP Recycling Corp.   *Id.* ¶ 9.

At the time Cowan hired Ferguson, Cowan and Ferguson entered into an "Employment Agreement" (the "Agreement"), the relevant provisions of which are referred to as the "Confidentiality/Non-Solicitation   Provisions."     *Id.*   ¶¶   5-7.     Among   other   things,   the

---

[2] Plaintiff filed its Complaint on March 30, 2012, followed by a motion for a temporary restraining order ("TRO") on April 2, 2012.   *See* ECF 6.   After a hearing on the TRO, held on April 3, 2012, I denied plaintiff's motion.   *See* ECF 10.   Ferguson has filed an Answer as well as a Counterclaim against Cowan.   *See* ECF 14, 15.

[3] In considering a motion to dismiss under Rule 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"   *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)); *see Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Confidentiality/Non-Solicitation Provisions barred Ferguson from soliciting Cowan's customers for one year post-termination, and from ever disclosing Cowan's business secrets. *Id.* ¶ 7.

On or about December 28, 2011, Ferguson resigned from his employment with Cowan, and began employment with Lipsey the following day. *Id.* ¶¶ 12, 13. Cowan immediately wrote to Lipsey, "advising it of the restrictive covenants and other agreements entered into by Ferguson and providing a copy of the Agreement." *Id.* ¶ 14. And, on January 13, 2012, Cowan "wrote to Lipsey advising that Cowan was aware Ferguson was breaching the Agreement, in which Lipsey was complicit and was interfering with Cowan's business and contracts…." *Id.* ¶ 15. This suit followed.

Cowan alleges that Ferguson has "communicated with and solicited Cowan's customers," including SP Recycling Corp., "for the purpose of soliciting business for Lipsey." *Id.* ¶ 17. In doing so, according to Cowan, Ferguson "has utilized Cowan's Business Secrets." *Id.* Cowan asserts that Ferguson and Lipsey, "in tandem," have solicited shipments managed by Ferguson while he was at Cowan. *Id.* ¶ 18. Specifically, Cowan alleges that SP Recycling Corp. has "significantly altered its long-standing relationship with Cowan and has entered into a contractual relationship with Lipsey for the services that Cowan previously provided[.]" *Id.* ¶ 19. According to Cowan, "Defendants' actions are causing an immediate threat to Cowan's business…." *Id.* ¶ 21.

### Discussion

### I.

Lipsey contends that Subtitle IV, Part B of the ICCTA, codified at 49 U.S.C. § 14501(c)(1), preempts Cowan's state law causes of action against Lipsey in Counts II, IV, V, VI,

VII, VIII, and IX of the Complaint. *See* Motion at 1. The ICCTA preemption provision, codified at 49 U.S.C. § 14501(c)(1), provides, in relevant part:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier...or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

It is undisputed that Cowan and Lipsey, as brokers, fall within the purview of this statutory provision.

Lipsey asserts that courts "have consistently applied section 14501(c)(1) to dismiss state-law claims similar to those asserted in the Complaint (except for 'breach of contract' claims) against motor carriers, brokers and freight forwarders on the grounds of federal preemption." Memo at 3. Accordingly, it urges the Court to dismiss "all causes of action against defendant Lipsey, none of which are based on breach of contract…." *Id.* at 7.

Plaintiff counters that "Lipsey's Motion to Dismiss is ill-conceived and not supported by the facts and/or law." Opposition at 2. In plaintiff's view, *id.*, the case at bar is

> based on a breach of an employment contract by Ferguson in violating certain covenants and by Lipsey colluding and conspiring in those breaches and interfering with Cowan's business interests. The fact that the dispute just happens to be between two transportation brokers is of no moment and irrelevant to any pre-emption argument as the crux of the case has nothing whatsoever to do with the "price, route or service…in respect of the transportation of property."

Plaintiff insists that its claims against Lipsey "are not even remotely 'related to a price, route or service of any motor carrier, broker or freight forwarder with respect to the transportation of property.'" *Id.* at 7. Rather, it claims that the suit "is based on Lipsey's intentional interference with Cowan's business relationship with its customers by assisting Cowan's former employee in breaching the employment agreement and restrictive covenants Ferguson had agreed with Cowan." *Id.* It continues: "The Complaint is based on Lipsey's

concerted effort to pilfer Cowan's business and goodwill," and is "not industry specific," as Lipsey's prices and services "are not relevant to the question of whether it intentionally interfered with Cowan's business relationships, stole Cowan's Trade Secrets, and acted in concert with Ferguson to perpetuate those harms." *Id*.  However, in describing Lipsey's alleged misconduct, Cowan asserts: "Lipsey has been undercutting the *rates* that Cowan offered SP Recycling Corp. in order to secure SP Recycling Corp.'s business, which *pricing information* must have come directly from Ferguson disclosing such confidential and proprietary pricing information." *Id*. at 3-4 (emphasis added).

## II.

In *Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364, 370-71 (2008), the Supreme Court recognized that the scope of the ICCTA's preemption provision is identical to that of the preemption provision of the Airline Deregulation Act ("ADA").  As "there is a dearth of case law interpreting the preemptive provision of the ICCTA,…case law interpreting the Airline Deregulation Act ('ADA') is particularly instructive in analyzing the issues in this case." *Mastercraft Interiors, Ltd. v. ABF Freight Systems, Inc.,* 284 F. Supp. 2d 284, 286 (D. Md. 2003).  The preemption provision of the ADA provides, in pertinent part:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle.

49 U.S.C. § 41713(b)(4)(A).

In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992), the Supreme Court explained that the ADA's preemption provision was enacted "[t]o ensure that the States would not undo federal deregulation with regulation of their own."  It also observed that the preemption

provision is intended to be broad. *Id.* at 383 (stating that "the words [of the preemption provision] express a broad pre-emptive purpose"). Accordingly, the Court interpreted the phrase "related to" in the preemption provision as encompassing all state laws "having a connection with" a carrier's rates, routes, or services. *Id.* at 383-84. However, if the connection to prices, routes, or services is "tenuous, remote, or peripheral," claims involving carriers' prices, routes, or services are not preempted. *Id.* at 390; *See, e.g., Wainwright's Vacations, LLC v. Pan American Airways Corp.*, 130 F. Supp. 2d 712, 724 (D. Md. 2001) (finding that a defamation claim brought by a passenger against an airline pilot was not preempted because it was not "related in more than a tenuous fashion to rates, routes, or services").

In *Rowe*, 552 U.S. at 370-71, the Supreme Court imported the following principles from *Morales*, 504 U.S. at 384, 386-87, 390, in regard to the analysis of claims implicating 49 U.S.C. § 14501(c)(1):

> (1) that "[s]tate enforcement actions *having a connection with, or reference to*" carrier "rates, routes, or services' are pre-empted,"…; (2) that such pre-emption may occur even if a state law's effect on rates, routes or services "is only indirect,"…; (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation…; and (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' deregulatory and pre-emption-related objectives….

(Alteration and emphasis in *Rowe*) (internal citations omitted). And, "pre-emption may occur even if a state law's effect on rates, routes, or services 'is only indirect.'" *Rowe*, 552 U.S. at 370 (citation omitted).

The Supreme court added in *American Airlines Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995), that preemption does not bar "routine breach of contract claims." The Court noted that routine contracts such as the "terms and conditions airlines offer and passengers accept are privately ordered obligations," and do not properly relate to a State's enactment or enforcement

of "any law, rule, regulation, standard, or other provision having the force and effect of law," within the meaning of the preemption provision. *Id.* at 228-29. However, the Court limited preemption of contractual disputes to those agreements "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233.

In short, with the exception of some contract disputes, a state law claim is generally preempted in order to "'ensure that the states [will] not *re*-regulate what Congress had decided to *de* regulate.'" *Wainwright's Vacations*, 130 F. Supp. 2d at 724 (quoting *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 191 (3d Cir. 1998)). This principle applies equally to claims that implicate state statutes or state common law, because "[s]tate common law counts as an 'other provision having the force and effect of law'" under the meaning of 49 U.S.C. § 14501(c)(1) of the ICCTA. *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000) (quoting *Wolens*, 513 U.S. at 233 n.8). S*ee, e.g., Mastercraft Interiors, supra*, 284 F. Supp. 2d at 288 (finding preempted plaintiff's state law tort claims of misrepresentation, negligent misrepresentation, and unjust enrichment).

The Fourth Circuit addressed the ADA's preemption provision in *Smith v. Comair*, 134 F.3d 254 (4th Cir. 1998). In that case, a passenger sued an airline for breach of contract, false imprisonment, and intentional infliction of emotional distress, after the airline refused to permit him to board a connecting flight (effectively detaining him at a layover airport for several hours) because its personnel at the passenger's originating airport had failed to check his identification. *Id.* at 256.

With respect to the intentional tort claims, the Court stated: "To determine whether a claim has a connection with, or reference to an airline's prices, routes, or services, we must look at the facts underlying the specific claim." *Id.* at 259. It concluded that the passenger's tort

claims were "based in part upon [the airline's] refusal of permission to board," and reasoned that "boarding procedures" are "[u]ndoubtedly...a service rendered by an airline." *Id.* Accordingly, the Court held that, "to the extent Smith's claims are based upon Comair's boarding practices, they clearly relate to an airline service and are preempted under the ADA." *Id.* But, it determined that the passenger's tort claims were *not* preempted to the extent that they were based on alleged actions other than denial of permission to board.  It reasoned, *id.:*

> Suits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the ADA if the conduct too tenuously relates or is unnecessary to an airline's services.  If, for example, an airline held a passenger without a safety or security justification, a claim based on such actions would not relate to any legitimate service and would not be preempted.[4]

### III.

Lipsey has offered a plausible argument that the parties' dispute is one "relat[ing] to a price, route, or service."  49 U.S.C. § 14501(c)(1).  It relies, *inter alia,* on Cowan's contention that "'Lipsey has been undercutting *the rates* that Cowan offered SP Recycling Corp.'"  Reply at 4 (quoting Opposition at 3).  According to Cowan, Lipsey acted "to secure SP Recycling Corp.'s business, which *pricing information* must have come directly from Ferguson disclosing such confidential and proprietary pricing information."  Opposition at 3-4 (emphasis added).  Plaintiff also asserts: "[E]very single case cited in Lipsey's Motion is inapposite and not on point, in not having any 'similar' facts relevant to any preemption issue."  Opposition at 6.

To be sure, most of the cases citing 49 U.S.C. § 14501(c)(1) "dealt with challenges to states or other government agencies seeking to promulgate laws, regulations or rules that somehow implicated pricing, routes or services of motor carriers, brokers and/or freight forwarders and involving transportation of property."  *Id.*  Most of the remaining cases

---

[4] The *Smith* Court said, however, that the tort claims that were not preempted failed to state a claim for relief under applicable state law.  *Id.* at 259–60.

implicating pricing were rate disputes between contracting parties, or consumer complaints. However, both parties cite *S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc.*, No. 10–0681, 2011 WL 4625655 (E. D. Wis. Sept. 30, 2011), which is particularly instructive here.

In *S.C. Johnson*, plaintiff brought suit to "recover damages from defendants as a result of their involvement in an alleged bribery and kickback scheme." *Id.* at *1.  Plaintiff alleged that "defendants gave plaintiff's employee…'thousands of dollars or more in money, goods, travel, entertainment, and services'" in exchange for "'favorable treatment'…which plaintiff allege[d] resulted in it paying defendants above-market rates, increased invoices, and for unnecessary services." *Id.*   The employee had been responsible for "selecting carriers and obtaining competitive rates for transportation from those carriers." *Id.*   Plaintiff lodged claims against defendants for fraudulent misrepresentation by omission, civil conspiracy, violation of Wisconsin's Organized Crime Control Act, and aiding and abetting breach of fiduciary duty.  *Id.* Defendants moved to dismiss, alleging, *inter alia*, that the claims were preempted under 49 U.S.C. § 14501(c)(1).  *Id*. at *1-2.

The court focused on the fact that the scheme "resulted in plaintiff paying increased rates and in addition, for unnecessary services."  *Id.* at *3.  The plaintiff argued "that payment of increased rates and for unnecessary services was merely a byproduct of the fraudulent conduct," and that the tort claims should therefore not be preempted.  *Id.* at *4.  But, the court said that "in matters subject to preemption that is not the court's focus."  *Id*.  It "acknowledge[d] that other courts have held intentional tort claims not preempted, using the underlying purpose of the preemptive provision at issue to come to such a conclusion."  *Id.* at *5 n.5.  However, the court found that the tort claims were preempted, indicating that it was "bound by Seventh Circuit case

law, which requires the court to focus on the text of the statute rather than its underlying purpose." *Id*.

The *S.C. Johnson* court cited *Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, No. 07-00007, 2007 WL 842064 (D. Haw. Mar. 19, 2007), as an example of a case in which an intentional tort claim was not preempted.[5]  In *Aloha*, defendant, an airline competitor of plaintiffs, "entered into negotiations with [plaintiffs] for potential investment purposes, resulting in two separate confidentiality agreements...." *Id.* at *1.  Plaintiffs agreed to disclose confidential information to defendant in order to assist defendant in evaluating "its potential for investment," with the understanding that, pursuant to the confidentiality agreements, all such information would remain confidential, and that defendant would not use the information for any purpose other than assessing its interest in transacting business with plaintiffs.  *Id*.

The defendant began to offer flights at below-cost rates after plaintiffs disclosed confidential information to defendant.  *Id.* at *2.  This prompted plaintiffs to bring suit, lodging, *inter alia*, fraud claims.  *Id*.  Asserting that defendant "sought to drive [them] out of business with...below market costs," they argued that, having achieved that objective, defendant would raise costs, as it would "have no competition and, thus, no incentive to keep costs low." *Id*.  The defendant moved to dismiss, claiming the fraud claims were preempted by the ADA.  *Id.* at *3.

The *Aloha* Court denied defendant's motion.  It reasoned that "Aloha's fraud claims are only tenuously, remotely, or peripherally related to [defendant's] pricing," as the fraud claims "principally involve[d] alleged fraudulent representations that [defendant]...would not use information obtained pursuant to the Confidentiality Agreements...when it...never intended to keep those promises." *Id.* at *11.  Noting that "courts have upheld state tort claims against

---

[5] Neither party cited *Aloha* in its briefing.

airlines when those claims do not undermine the purpose of the ADA to promote competition in the airline industry," it concluded that to find the fraud claims preempted "would work to contravene the purpose of the ADA to promote competition among airlines." *Id.* In its view, plaintiffs' claims were based on defendant's "use of the confidential information to keep prices of fares below-cost to drive out [plaintiffs] and to monopolize the market, after which [defendant] likely would raise prices." *Id.*

The varying outcomes in *S.C. Johnson* and *Aloha* can be attributed to the controlling precedent of the circuits in which the cases were heard. To my knowledge, the Fourth Circuit has never addressed the ICCTA's preemption provision,[6] and has addressed the ADA's preemption provision in a single reported opinion, *Smith, supra,* 134 F.3d 254, and an unreported opinion, *Weber v. USAirways, Inc.*, 11 F. App'x 56 (4th Cir. 2001). Neither *Smith* nor *Weber* is factually similar to the case at bar. In my view, the *Aloha* Court's analysis is persuasive, and I shall follow it here.

"The purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (alteration in original; citations and internal quotation marks omitted). "In 1978, Congress determin[ed] that maximum reliance on competitive market forces would favor lower airline fares and better airline service, and it enacted the Airline Deregulation Act." *Rowe,* 552 U.S. at 367-68. In deregulation, "Congress' overarching goal [w]as helping assure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'" *Id.* at 371 (citation omitted). The purpose of

---

[6] In *In re Apex Exp. Corp.*, 190 F.3d 624 (4th Cir. 1999), a 49 U.S.C. § 14501(c)(1) preemption issue was raised by one of the parties, but the Court found it inapplicable and did not address the issue.

the ADA's preemption provision was "[t]o ensure that the States would not undo federal deregulation with regulation of their own…." *Morales,* 504 U.S. at 378.  These same principles undergird the preemption provision of the ICCTA.  *Rowe,* 552 U.S. at 368.

I do not agree with Lipsey that Cowan's claims implicate "precisely the kind of state-law remedies that are preempted by section 14501(c)(1)."  Memo at 6.  Lipsey itself states that the preemption provision was "intended to free the transportation industry from economic regulation and from the myriad of state laws and regulations that could burden interstate commerce, and to promote competition within the transportation industry."  *Id.* at 7.  It is difficult, then, to see how Lipsey's alleged behavior is "precisely" what Congress had in mind.  The crux of Cowan's claims against Lipsey is that Lipsey "collude[ed] and conspir[ed]" with Ferguson to breach the restrictive covenant Cowan had with Ferguson, and "interfere[ed] with Cowan's business interests."  Opposition at 2.  That at least some of the misappropriated information happened to be pricing information should not serve to insulate Lipsey from liability and "wrap its wrongdoing in a cloak of immunity to avoid exposure simply because it happens to engage in brokerage services."  *Id.* at 7.  With the preemption provisions, Congress intended to shield transportation industries from state interference with competitive enterprise, not to shield individual bad actors from *thwarting* competitive enterprise.

For the foregoing reasons, the Court will deny defendant Lipsey's motion to dismiss.  A separate Order, consistent with this Opinion, follows.


Date: July 23, 2012                         /s/_____
                                            Ellen Lipton Hollander
                                            United States District Judge